**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

DELBERT M. GREENE                )
                                 )        3:07-CV-00474-LRH-VPC
        Plaintiff,               )
                                 )
    vs.                          )        **REPORT AND RECOMMENDATION**
                                 )        **OF U.S. MAGISTRATE JUDGE**
DWIGHT NEVEN, et al.,            )
                                 )
        Defendants.              )        May 27, 2009
_____)

        This Report and Recommendation is made to the Honorable Larry R. Hicks, United States

District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28

U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for a preliminary

injunction, styled "Affidavit of Plaintiff, Request for Injunction" (#27). Defendants opposed

(#30). Plaintiff did not file a reply.  The court has thoroughly reviewed the record and the motions

and recommends that plaintiff's motion for a preliminary injunction (#27) be denied.

**I. HISTORY & PROCEDURAL BACKGROUND**

        Plaintiff Delbert Greene ("plaintiff"), a *pro se* prisoner, is currently incarcerated at Ely

State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#11).

Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging defendants violated his First,

Eighth and Fourteenth Amendment rights against retaliation and cruel and unusual punishment

and to equal protection and due process of the law while incarcerated at High Desert State Prison

("HDSP").  *Id.*  Plaintiff names as defendants Dwight Neven, HDSP Warden, Claude Willis,

Associate Warden of Programs at HDSP, E. Jenkins, former correctional officer at HDSP, Jeremy

Bean, Jeffrey Walker, and Jeremy Jackson, senior correctional officers at HDSP.[1] *Id.*

_____

        [1]The Office of the Attorney General accepted service for defendants Neven, Willis, and Baca
on November 6, 2008 (#12), and for defendant Walker on December 5, 2008 (#17). The U.S.
Marshall issued a summons to defendant Jackson on April 30, 2009 (#37), and he is now also
represented by the Office of the Attorney General (#38). The U.S. Marshall's office was unable to

1    Plaintiff filed his first amended complaint on October 17, 2008, including three counts
2    of alleged constitutional violations. In count I, plaintiff alleges that defendants Neven and Willis
3    retaliated against plaintiff for exercising his First Amendment rights (#11). Plaintiff claims that
4    he was sexually harassed and assaulted by Officer E. Jenkins. *Id*. p. 4. He grieved and complained
5    to defendants about the incident. However, defendants Neven and Willis "conspired to cover up
6    a crime and refused to allow a higher authority to investigate a crime they enforce upon the
7    prisoners but refused to enforce upon their own; and allowed a predator to resign from his duties."
8    *Id*. p. 6. Plaintiff claims that because he grieved the alleged assault, defendants Neven and Willis
9    retaliated against him by refusing to accept any of plaintiff's subsequent grievances, and that
10   defendant Neven admitted to such retaliation. *Id*.

11   In count II, plaintiff alleges that defendants violated his Eighth Amendment rights by
12   forcing him to live in an unsanitary cell for seven months. *Id*. p. 7. Further, defendants retaliated
13   against plaintiff because of his use of the grievance system by "Jackson removing all personal
14   property [from plaintiff's cell] to stop plaintiff from contacting outside help; C. Willis giving
15   special attention to Neven's response on kite back to plaintiff; J. Walker giving plaintiff two years
16   in the hole with the threat of 'no' investigation and had plaintiff shipped to a maximum prison;
17   this all resulted in denied phone calls; store restriction before plaintiffs' disciplinary hearing; legal
18   worked delayed and mail room searching for the documents of Warden Neven." *Id*. Plaintiff again
19   claims that defendant Neven admitted that defendants retaliated against him. *Id*.

20   In count III, plaintiff alleges that Jenkins sexually harassed him on January 29, 2006, and that
21   defendant Neven failed to protect him from this harassment. *Id*. p. 8. Further, defendant Neven
22   deliberately tried to cover up the incident "by ignoring all grievances and refusing [to give]
23   plaintiff mental [health care]." *Id*. Plaintiff also states that he was denied psychiatric help
24   following the harassment. *Id*. p. 5. Plaintiff also claims violations of his Fourteenth Amendment
25   rights to due process and equal protection. However, it is unclear from the complaint exactly what

26   _____

27   locate Officer E. Jenkins, and he was not served with plaintiff's complaint (#36). The court issued
28   a 4(m) notice on May 22, 2009 (#39). Plaintiff was given until June 21, 2009 to file a proof of
     service on Officer E. Jenkins; otherwise, he will be dismissed from this lawsuit.

1    actions defendants took to violate plaintiff's Fourteenth Amendment rights. *Id*. p. 8. Plaintiff also

2    appears to again allege retaliation, stating that prison staff "continually searched" and "scattered"

3    his legal papers after defendant Neven sent plaintiff a letter "admitting guilt," and that plaintiff

4    sent these incriminating documents to someone outside of the prison. *Id.*

5            The court notes that the plaintiff is proceeding *pro se*.  "In civil cases where the plaintiff

6    appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit

7    of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see*

8    *also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

9                            **II.  DISCUSSION & ANALYSIS**

10       **A.       Discussion**

11            **1.              Preliminary Injunction Standard**

12       The Prison Litigation Reform Act ("PLRA") states that

13               In any civil action with respect to prison conditions, to the extent
                 otherwise authorized by law, the court may enter a temporary
14               restraining order or an order for preliminary injunctive relief.
                 Preliminary injunctive relief must be narrowly drawn, extend no
15               further than necessary to correct the harm the court finds requires
                 preliminary relief, and be the least intrusive means necessary to
16               correct that harm.  The court shall give substantial weight to any
                 adverse impact on public safety or the operation of a criminal
17               justice system caused by the preliminary relief... .

18    18 U.S.C. § 3626(2).

19            The traditional equitable criteria for granting a preliminary injunction in the Ninth Circuit

20    are: "(1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to

21    the plaintiff if the preliminary relief is not granted; (3) a balance of hardships favoring the

22    plaintiff, and (4) advancement of the public interest (in certain cases)." *Johnson v. California*

23    *State Bd. Of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995); *Clear Channel Outdoor, Inc. v.*

24    *City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003).  Alternatively, the moving party may

25    demonstrate *either* a combination of probable success on the merits and the possibility of

26    irreparable injury *or* that serious questions going to the merits were raised and the balance of

27    hardships tips sharply in his or her favor.  *Johnson*, 72 F.3d at 1430 (emphasis added); *see also*

28    *Earth Island Institute v. U.S. Forest Service*, 351 F.3d 1291, 1298 (9th Cir. 2003).  The Ninth

Circuit has stated that these alternatives represent "extremes of a single continuum" rather than two separate tests and thus, the "greater the relative hardship to [the party seeking the preliminary injunction,] the less probability of success must be shown." *Clear Channel*, 340 F.3d at 813.

A prohibitory injunction preserves the status quo while litigation is pending, while a mandatory injunction provides preliminary relief well beyond maintaining that status quo. *Stanley v. University of Southern California*, 13 F.3d 1313, 1320 (9th Cir. 1994). Mandatory preliminary injunctions are disfavored, and "the district court should deny such relief 'unless the facts and law clearly favor the moving party.'" *Id.* (quoting *Martinez v. Matthews*, 544 F.2d 1233, 1243 (5th Cir. 1976). The "granting or withholding of a preliminary injunction rests in the sound judicial discretion of the trial court." *Dymo Industries, Inc. v. Tapeprinter, Inc.*, 325 F.2d 141, 143 (9th Cir. 1964).

**B.   Analysis**

Plaintiff requests the court enjoin defendants from harassing him and force defendants to transfer him to the "working housing unit" (#27, p. 1). He states that he has been in lockdown for twenty-eight months, although he was only sentenced to one year in disciplinary segregation. *Id.* Plaintiff claims that defendants are keeping him in "24 hour lockdown" as a means of retaliating against him for bringing sexual harassment charges against a correctional officer. *Id.* In the alternative, plaintiff requests the court order that he be transferred to Southern Desert Correctional Center. *Id.* p. 2.

**1.   Likelihood of Success on the Merits**

To obtain a preliminary injunction, plaintiff must offer evidence that there is a likelihood he will succeed on the merits of his claim. *Johnson*, 72 F.3d at 1430. "Likelihood of success on the merits" has been described as a "reasonable probability" of success. *King v. Saddleback Junior College Dist.*, 425 F.2d 426, 428-29 n.2 (9th Cir. 1970).

**a.   First Amendment Retaliation**

Prisoners have a right to meaningful access to the courts, and prison authorities may not penalize or retaliate against an inmate for exercising this right. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995). Prison officials may be sued under Section 1983 for retaliating against a

prisoner for exercising his or her constitutional rights. *Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir. 1995). A retaliation claim involves five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2004).

Although an inmate alleging a retaliatory transfer has "no constitutionally-protected liberty interest in being held at, or remaining at, a given facility," an inmate need not establish "an independent constitutional interest in...assignment to a given prison...because the crux of his claim is that state officials violated his *First Amendment* rights by retaliating against him for his protected speech activities." *Pratt*, 65 F.3d at 806 (emphasis in original). Retaliation claims must be evaluated in light of the deference accorded to prison officials. *Id*. at 807. The inmate bears the burden of pleading and proving the absence of legitimate correctional goals for the alleged retaliatory action. *Id*. at 806; *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003). The Ninth Circuit has recognized that "timing can properly be considered as circumstantial evidence of retaliatory intent." *Pratt*, 65 F.3d at 808.

**b.    Due Process - a prisoner's right to transfer**

The Due Process Clause does not give inmates a right to be incarcerated in a specific prison. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution. The Constitution does not require that the State have more than one prison for convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison, if, as is likely, the State has more than one correctional institution....The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons." *Meachum v. Fano*, 427 U.S. 215, 224 (1976) (emphasis in original). A "convicted felon does not forfeit all constitutional protection by reason of his conviction and confinement in prison. He retains a variety of important rights that the courts must be alert to protect." *Id*. at 225. However,

the Due Process clause is not triggered by *any* substantial deprivation imposed by prison authorities. *Id*.

### c.   Analysis

Plaintiff claims he is likely to succeed on the merits because he has produced sufficient "incriminating evidence against defendants" (#27, p. 3). Plaintiff states that there are over 200 inmates who will act as witnesses and eight other inmates who were also sexually harassed by Jenkins. *Id*. Plaintiff argues that this evidence, coupled with the fact that Officer E. Jenkins was able to "resign without prosecution," is enough to demonstrate that defendant Neven "cover[ed] up a crime." *Id*. Further, although "plaintiff is housed in a unit that is believed to be general population, [he] is on constant lockdown [similar to] inmates in the hole." *Id*.

Defendants respond that plaintiff has failed to show a likelihood of success on the merits because the evidence does not demonstrate retaliation and plaintiff has not established that defendants violated his due process rights (#30, p. 9).  With regard to plaintiff's due process allegations, defendants state that "Plaintiff indirectly alleges that his due process rights were violated because he is misclassified as being in the 'lockdown unit.'" *Id*. However, Due Process rights are derived only from the United States Constitution and state law. The Due Process Clause "does not create a liberty interest in a particular classification for a prisoner" and "Nevada has not created a protected liberty interest in classification hearings." *Id*. p. 9-10, citing *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976), *Monahan v. Wolff*, 585 F. Supp. 1198, 1201 (D. Nev. 1984). Further, although plaintiff claims he is in the "hole" in ESP, he is actually housed in the General Population unit. *Id*. p. 11. The classification of plaintiff in a lockdown unit in ESP "is a matter left to the discretion of prison officials. An inmate has no right to any particular classification." *Id*. p. 12. Finally, plaintiff has no Constitutional right to be transferred to a different prison as inmates have no right to be incarcerated at a specific institution, and there is "nothing in the record [to show] that Plaintiff's classification was not related to a legitimate penological interest." *Id*. Therefore, "[a]s Plaintiff has no Constitutional Right to be housed in [a] prison of his choosing, Plaintiff is unable to show a violation of his Constitutional Rights, and therefore, is unable to show a likelihood of success on the merits." *Id*. p. 14.

First, with regard to plaintiff's retaliation claim, plaintiff has failed to demonstrate a likelihood of success on the merits. Plaintiff has not offered evidence of retaliatory intent; therefore, he has not established the causation element of retaliation. The evidence shows that plaintiff was transferred to ESP because he was found guilty of assaulting an NDOC employee, not because he accused an officer of sexual harassment. Additionally, plaintiff has not demonstrated the absence of legitimate correctional goals for the alleged retaliatory action. Punishing inmates for violating rules and acting violently toward prison officials advances legitimate correctional goals of safety, security, and order. Further, housing plaintiff or other inmates who have been found guilty of a serious assault charge in a maximum security institution also advances legitimate penological goals of safety and security. Moreover, plaintiff has continually grieved his transfer, and has commenced the instant lawsuit. Therefore, he has not shown that defendants chilled his First Amendment rights.

With regard to plaintiff's due process claim, plaintiff has failed to demonstrate that his conditions of confinement violate his due process rights. Plaintiff may be dissatisfied that he is currently housed in a maximum security prison, but he has presented no evidence that the conditions he experiences at ESP create an "atypical and significant hardship in relation to the ordinary incidents of prison life," such that the Due Process Clause would be implicated. *See Sandin v. Connor*, 515 U.S. 472, 482 (1995). Further, plaintiff states that he is on "lockdown," implying that he is still housed in disciplinary segregation. However, plaintiff is no longer in disciplinary segregation. It is unclear if he was housed in disciplinary segregation for a longer period of time than his 360-day sentence; however, plaintiff is housed in general population now. Therefore, any claim to transfer him to general population would be moot. Additionally, plaintiff has no due process right to be transferred to another prison. Therefore, plaintiff has not presented evidence of deliberate indifference and has not demonstrated a likelihood of success on the merits.

## 2.  Irreparable Injury

To obtain a preliminary injunction, plaintiff must offer evidence that he will be irreparably injured without the injunction. *Johnson*, 72 F.3d at 1430.  "Courts generally do look at the

immediacy of the threatened injury in determining whether to grant preliminary injunctions." *Privitera v. California Bd. Of Medical Quality Assurance*, 926 F.2d 890, 897 (9th Cir. 1991) *citing Caribbean Marine*, 844 F.2d at 674 ("a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief").

Plaintiff argues that he will be irreparably harmed without the injunction because he will continue to be housed in "lockdown" (#27, p. 2). Further, defendants have violated his rights by retaliating against him by placing him in disciplinary segregation, which retaliation defendant Neven admitted. *Id*. ("but the admittance of the hearing officer's decision was deemed 'retaliation.'").

Defendants contend that the evidence produced in plaintiff's motion is not sufficient for issuance of a preliminary injunction because plaintiff has not established irreparable injury (#30, p. 4). Defendants argue that plaintiff was properly found guilty of assaulting an NDOC officer, that he was given a fair disciplinary hearing, appropriate sanctions, and the opportunity to appeal. *Id*. The Hearing Officer sanctioned plaintiff two years in disciplinary segregation and a thirty day loss of canteen, telephone, and visitation. *Id*. Defendants state that these sanctions are in accordance with the sentencing guidelines in AR 707. *Id*. Plaintiff appealed the hearing officer's decision to defendant Warden Neven, who reduced the sanctions against plaintiff. *Id*. Specifically, Warden Neven found: "The Hearing Officer conducted the disciplinary hearing in accordance with AR 707. The Hearing Officer's decision was based on some evidence; however, the sanctions imposed appear to be excessive." *Id*. ex. C. Warden Neven reduced plaintiff's disciplinary segregation to 360 days and removed the thirty-day loss of canteen, telephone, and visitation. *Id*. p. 5. The fact that defendant Neven reduced plaintiff's sanctions undermines plaintiff's retaliation claim against Neven. *Id*. Further, Warden Neven did not admit retaliation in his memorandum reducing plaintiff's sanctions. Rather, the statement plaintiff uses for support is "simply a restatement of the grounds alleged by Plaintiff for appealing the prior disciplinary findings against him." *Id*. Finally, defendants did not violate plaintiff's due process rights at the disciplinary hearing, and whether plaintiff believes the charges brought against him to be fabricated is irrelevant to any due process claim. *Id*. p. 6-8. Therefore, "[s]ince Plaintiff cannot

establish that Defendants infringed upon his Constitutional Rights as a matter fo law, Plaintiff cannot establish that he has suffered irreparable harm." *Id*. p. 8.

Plaintiff has not demonstrated that defendants violated his constitutional rights or that he will suffer an immediate irreparable injury without an injunction. As set forth above, plaintiff has not established that defendants retaliated against him by sentencing him to disciplinary segregation or by transferring him to ESP. It appears that plaintiff received a fair hearing, which complied with the confines of procedural due process, and plaintiff has not presented evidence to suggest otherwise. Further, plaintiff has no due process right to a particular classification or to be housed at a particular prison. It appears that the prison investigated plaintiff's allegations of sexual harassment against Jenkins and that Jenkins resigned. Moreover, there is no evidence that NDOC officials attempted to "cover-up a crime." Although the court agrees that plaintiff's allegations of sexual harassment are alarming and raise cause for concern, it appears that Jenkins no longer works for NDOC, and, therefore, poses no further threat to plaintiff. Plaintiff has failed to demonstrate that he will be irreparably injured without a preliminary injunction.

### 3.   Balance of Hardships and Public Interest

Because the court concludes that plaintiff failed to demonstrate a likelihood of success on the merits and irreparable injury, the court will not address the balance of hardships or public interest elements.

### 4.   Alternative Test

The Ninth Circuit has held that as an alternative to the four traditional equitable criteria for relief through preliminary injunction, plaintiff may prove either (1) probable success on the merits and the possibility of irreparable injury, or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in his favor. *Southwest Voter Registration Educ. Project*, 344 F.3d at 917 (emphasis added). Above the Court concluded that plaintiff has not shown that he can meet the first alternative test – a likelihood of success on the merits and irreparable injury.

Regarding the second alternative test, there are not at this time "serious" questions as to plaintiff's First, Eighth, or Fourteenth Amendment claims. Further, the balance of hardships do

not tip "sharply" in plaintiff's favor; defendants have an interest in maintaining safety and security and in determining where an inmate is housed. Defendants have demonstrated that plaintiff was transferred to ESP in response to a finding that plaintiff assaulted an NDOC employee. Therefore, should plaintiff be transferred to a less secure NDOC institution, the balance of hardships would weigh in favor of defendants. Thus, plaintiff has not met the second alternative test.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that plaintiff has not provided evidence to the court that he is likely to succeed on the merits of his First or Fourteenth Amendment claims, nor has he demonstrated he will suffer irreparable harm in the absence of an injunction. As such, the court recommends that plaintiff's motion for a preliminary injunction (#27) be **DENIED**.

The parties are advised:

1.   Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.   This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for a preliminary injunction (#27) be **DENIED**.

**DATED:** May 27, 2009.

_____
**UNITED STATES MAGISTRATE JUDGE**