UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DELBERT M. GREENE, | 3:07-CV-00474-LRH-VPC |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| DWIGHT NEVEN, *et al.*, | |
| Defendants. | January 26, 2010 |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants Neven, Willis, Baca, Walker, Bean, and Jackson's (collectively, "defendants") revised motion to dismiss, or in the alternative, motion for summary judgment (#45).[1] Plaintiff responded (#48), but defendants did not reply. The court has throughly reviewed the record and the motions and recommends that defendants' motions to dismiss be granted.

### I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Delbert M. Greene ("plaintiff"), a *pro se* prisoner, is currently incarcerated at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#11). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging constitutional violations during his incarceration at High Desert State Prison ("HDSP"). *Id.* Plaintiff claims that defendants retaliated against plaintiff because he reported sexual harassment by an NDOC correctional officer.

---

[1] Originally, defendants Neven, Willis, and Baca filed a motion to dismiss (#14), to which defendants Walker, Bean, and Jackson sought to join (#38). Defendants attempted to merely notice their intent to joint the motion to dismiss, but the court required that defendants Walker, Bean, and Jackson file a proper joinder (#40). Accordingly, defendants have revised the motion to dismiss to include all defendants (#45).

*Id.* p. 5. Plaintiff names as defendants: Dwight Neven, HDSP Warden; Claude Willis, HDSP Associate Warden of Programs; Isidro Baca, HDSP Warden; Jeremy Bean, HDSP Senior Corrections Officer; Jeffrey Walker, HDSP Corrections Officer; Jeremy Jackson, HDSP Corrections Officer; and Ernest Jenkins, former HDSP Corrections Officer (#45).

Plaintiff alleges that in early 2006 defendant Jenkins ("Jenkins") made sexual advances toward plaintiff and offered to obtain contraband for plaintiff in exchange for sexual favors.[2] Plaintiff's grievances describe how Jenkins invited plaintiff into an office, stared at plaintiff's genitals, made suggestive comments, and began to fondle himself (#48, pp. 26-27). Plaintiff does not allege any physical contact, but plaintiff maintains that "the scar left in my mind of [Jenkins] getting an erection and looking at me in a sexual way was very disturbing and uncomfortable" and that this "mental abuse was to much to bare [sic] and frighten[ed] me emotionally" (#11, p. 8). After reporting Jenkins's sexual misconduct, plaintiff alleges that defendants began to retaliate.

In total, plaintiff alleges violations of his constitutional rights in three counts. Deciphering the complaint is difficult, but the court construes it in the following manner. In count I, plaintiff alleges that defendants Neven and Willis retaliated against plaintiff by refusing to recognize his grievances concerning Jenkins (#11, p. 6). He claims that defendants Neven and Willis have "put a stop to" all of plaintiff's grievances with respect to plaintiff's sexual harassment from Jenkins. Plaintiff even notes that defendant Neven "admits" retaliation. *Id.* As for defendant Willis, plaintiff alleges that he was "conspiring" with defendant Neven to refuse to redress plaintiff's grievances. *Id.* In sum, plaintiff claims that defendants Neven and Williams "conspired to cover up a crime and refused to allow a higher authority to investigate a crime they enforce upon the prisoners but refused to enforce upon their own; and allowed the predator to resign from his duties." *Id.* p. 6.

In count II, plaintiff alleges violations of the First and Eighth Amendments as well as the

---

[2] Ernest Jenkins is a defendant in this case. Because defendant Jenkins is no longer employed with the NDOC, plaintiff has been unable to serve defendant Jenkins through the Office of the Attorney General. NDOC provided plaintiff with defendant Jenkins's last known address, but plaintiff has been unable to serve the defendant. Plaintiff has requested that the Office of the Attorney General accept service for defendant Jenkins, and he has filed a motion to do so(#63). However, defendants have opposed the motion (#64). The court does not address this issue in this Report and Recommendation.

Fourth Amendment (#11, p. 7).[3] Plaintiff alleges that defendants' conduct constitutes adverse action taken in retaliation against plaintiff in violation of his First Amendment rights. *Id.* Specifically, plaintiff makes factual averments that defendant Baca subjected him to "unsanitary" cell conditions, that defendant Jackson searched and seized his personal property, and that defendant Walker improperly sanctioned him to two years in disciplinary segregation and transferred him to a maximum security prison. *Id.* Plaintiff includes that these acts have resulted in the denial of phone calls and the delay of legal work. Plaintiff also expresses dismay because he was a "role model inmate with no disciplinary actions." *Id.* While these adverse acts described above form the factual basis of an element of plaintiff's retaliation claim, they also forms the basis for plaintiff's separate allegations of violations of the Eighth and Fourth Amendments. Specifically, plaintiff alleges that defendant Baca subjected plaintiff to "unsanitary" cell conditions for seven months in violation of the Eighth Amendment and that defendant Jackson seized plaintiff's property in violation of the Fourth Amendment.[4]

In count III, plaintiff targets defendants Neven and Jenkins, claiming violations of the Fourteenth Amendment Due Process and Equal Protection Clauses. Plaintiff describes Jenkins's sexual harassment and alleges that defendant Neven "failed to protect" plaintiff "from the mental abuse by allowing one of his insubordinates [sic] to mentally and physically engage upon me sexually and continued the same sexual harassment, causing emotional distress. . . ."

The court notes that the plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

---

[3] The heading of plaintiff's complaint for count II reads, "Eighth Amendment: Plaintiff was submitted to cruel and unusual punishment, retaliation/unsanitary conditions for exercising his constitutional rights, or Fourth Amendment" (#11, p. 7).

[4] The court does not address plaintiff's transfer, in itself, as a viable claim. Prisoners do not have a constitutionally protected liberty interest in where they are housed. *Meachum v. Fano*, 427 U.S. 215, 225-27 (1976). However, the court will address the transfer in light of the retaliation claim because prisoners may not be transferred in retaliation for the exercise of their First Amendment rights. *See Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).

3

## II. DISCUSSION & ANALYSIS

A.     **Discussion**

    1.     **Motion to Dismiss Standard**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 1955. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The complaint need not contain detailed factual allegations, but it must contain more than a formulaic recitation of the elements of a cause of action. *See id.* at 570.

In a motion to dismiss, "all allegations of material fact in the complaint are taken as true and construed in a light most favorable to the plaintiff." *Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116, 1120 (9th Cir. 2007). When considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court employs to a two-pronged approach. *Iqbal*, 129 S.Ct. at 1955. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id.* Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* In other words, for the nonmovant to succeed, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Under section 1983, a plaintiff must allege that (1) defendants subjected him to the deprivation of a right, privilege or immunity guaranteed by the U.S. Constitution or federal law, and (2) that the defendant acted under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

### 2. Failure to Exhaust Administrative Remedies

A failure to exhaust nonjudicial remedies is treated as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion to dismiss. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003). In deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20. If the court concludes that plaintiff has not exhausted his administrative remedy, the proper remedy is dismissal of the claims without prejudice. *Id.*

### B. Analysis

In counts I and II, plaintiff alleges that defendants retaliated against him for reporting Jenkins's misconduct and that various defendants "conspired" to retaliate. In count III, plaintiff contends that defendants violated his Fourteenth Amendment right to due process and equal protection in failing to protect plaintiff from sexual harassment of prison guards. In addition to these counts, the court also examines whether plaintiff's factual averments entitle him to relief under any available, but unpleaded, legal theories. *See Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir. 2001) ("Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief.").

### 1. Retaliation

#### a. Count I: Defendants Neven and Willis

In count I, plaintiff alleges that defendants Neven and Baca have refused plaintiff's grievances in retaliation for plaintiff's complaints of sexual harassment. Defendants argue that plaintiff fails to frame colorable allegations of a retaliation claim (#45).

"A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "Of fundamental import to prisoners are their First Amendment 'rights to file prison grievances . . .'" *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003)). "Because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they

1  are designed to shield." *Id.* "Within the prison context, a viable claim of First Amendment
2  retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action
3  against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled
4  the inmates exercise of his First Amendment rights, and (5) the action did not reasonably advance
5  a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68.

6  Here, plaintiff notes that defendant Neven has "put a stop to plaintiff's grievances concerning
7  sexual harassment" and has stated that "grievances no longer work for NDOC" (#11, p. 6). Other
8  than these conclusory statements, plaintiff does not offer any factual allegations to demonstrate that
9  his ability to file grievances has been stymied or that his grievances have been arbitrarily rejected.
10 Attached to his opposition to the instant motion, plaintiff submits numerous pages of correspondence
11 and grievances (#48, Exs. A-J). Many of the grievances are rejected as "improper" due to their
12 failure to follow procedural rules of the NDOC grievance system.[5] Plaintiff appears to contend that
13 the application of NDOC administrative procedures constitutes a substantive refusal to redress his
14 grievances. Plaintiff appears to confuse prison officials' handling of the content of his grievance
15 with a restriction on his ability to make a grievance at the outset. That prison officials did not
16 respond the way plaintiff would have liked does not amount to a constitutional claim. Plaintiff's
17 inability to file grievances properly is fatal to his claim because he demonstrates that the alleged
18 adverse acts of defendant Neven or Willis occurred because of his shortcomings in following prison
19 grievance procedures, not the exercise of his First Amendment rights. In order to state a viable claim
20 for retaliation, plaintiff is required to demonstrate that his inability to grieve occurred *because of* his
21 complaints about defendant Jenkins. Plaintiff must also show that such acts chilled his First
22 Amendment rights and that they had no legitimate correctional goal. The court stresses that plaintiff
23 must plead such elements of his claim with sufficient factual content to state a plausible claim.

---

[5] In this instance, the court considers information beyond the pleadings; however, the court does not convert the motion to dismiss to a motion for summary judgment. In general, if a district court considers evidence outside the pleadings, the motion will be treated as one for summary judgment. Fed. R. Civ. P. 12(d). However, "a court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Here, the grievances are referred to in the complaint and are central to plaintiff's claim.

1  Conclusory statements will not suffice. Absent such facts, plaintiff fails to state a plausible claim
2  for retaliation with respect to defendants Neven and Willis.

### b. Count II: Defendants Bean, Baca, Willis, Walker, and Jackson

In count II, plaintiff alleges retaliation claims against defendants Bean, Baca, Willis, Walker, and Jackson (#11, p. 7). As noted above, defendants argue that plaintiff has not framed a colorable violation of his rights (#45). Defendants also address the constitutionality of the underlying adverse acts. *Id.*

As discussed above, a plaintiff must allege five essential elements to state a claim for retaliation. *See Rhodes*, 408 F.3d at 567-68. However, for the purposes of his retaliation claim, plaintiff need not establish an independent constitutional interest in the adverse acts of defendants because the "crux of [the] claim is that state officials violated his *First Amendment* rights by retaliating against him for his protected speech activities." *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (emphasis in original). In other words, the inquiry in a retaliation claim focuses on the retaliatory conduct in relation to the underlying conduct, not whether the underlying conduct constitutes a constitutional violation in itself. *See Rhodes*, 408 F.3d at 567.

With respect to defendants Bean and Willis, the court is simply unable to determine the basis of plaintiff's allegations. Plaintiff alleges that defendant Bean "retaliated" against him, but plaintiff fails to include any factual content behind such an allegation. In a motion to dismiss, the court need not accept such unsubstantiated legal conclusions as true. *See Iqbal*, 129 S.Ct. at 1955. Plaintiff also alleges that defendant Willis should be liable for "giving special attention to Nevens response on kite back to plaintiff." *Id.* The court is at a loss to find what plaintiff means by this. Given that plaintiff offers no more than these conclusory statements, the court must dismiss the claim.

With respect to defendants Baca, Jackson, and Walker, plaintiff also fails to make sufficient allegations. Plaintiff properly alleges that the defendants have committed "adverse acts," namely keeping him in an unsanitary cell for seven months, removing all his personal property, and transferring him to a maximum security prison (#11, p. 7). But plaintiff fails to plead the causation element of a retaliation claim. Plaintiff notes that defendants' actions were a "chain reaction" *Id.* However, the court is uncertain whether plaintiff means that his protected activity caused each

7

1  adverse act, or whether the protected activity resulted in merely one act, which then caused another
2  and so on. Indeed, the words "chain reaction," implies the latter, but court is ultimately uncertain
3  what plaintiff means. Additionally, plaintiff fails to plead that defendants' acts had no legitimate
4  correctional goal. Plaintiff pleads that he was a "role model inmate with no disciplinary infractions"
5  (#11, p. 7). On a motion to dismiss, the court is obligated to read all inferences in favor of the
6  nonmoving party, and accepting plaintiff's assertion as true, the court may reasonably infer the *fact*
7  that plaintiff, a "role model" inmate, did not spur or invoke defendants' adverse acts. However, the
8  court would draw an impermissible *legal* conclusion if it were to say the plaintiff's status as a "role
9  model inmate" necessarily means that defendants' acts had no legitimate correctional goal. For
10 example, prison officials may seize property perceived to be a danger to the safety and security of
11 the institution or even transfer an inmate from one institution to another, notwithstanding a
12 prisoner's status or lack of disciplinary infractions. Plaintiff thus fails to state the essential elements
13 of his claim, and the court dismisses count II.

14          **2.     Conspiracy Claims**

15          Plaintiff does not expressly allege claims of conspiracy. However, in count I, plaintiff refers
16 to defendants Neven and Willis "conspiring" with one another to retaliate against plaintiff, and in
17 count II, plaintiff indicates that defendant Nevens "conspired" with the other defendants to retaliate
18 (#11, pp. 6-7). Therefore, the court addresses these claims.

19          To establish a claim for conspiracy to deprive a person of his or her civil rights, a plaintiff
20 must prove that a meeting of the minds occurred between two or more persons to deprive the
21 plaintiff of his civil rights. *See Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002). Additionally, the
22 plaintiff must demonstrate that some racial or other class-based, discriminatory animus for the
23 conspirators' conduct motivated the deprivation, and the plaintiff must be a member of the
24 discriminated class. *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045 (9th Cir. 2002). Plaintiffs
25 alleging a conspiracy to deprive them of their constitutional rights must "include in their complaint
26 non-conclusory allegations containing evidence of unlawful intent or face dismissal prior to the
27 taking of discovery." *Harris v. Roderick*, 126 F.3d 1189, 1195 (9th Cir. 1997).

28          Here, plaintiff does not allege that defendants discriminated against him based on his

8

membership in a discriminated class, nor does he mention any racial or class-based animus. Therefore, plaintiff fails to allege the essential elements of a conspiracy claim.

### 3. Eighth Amendment: Conditions of Confinement

Plaintiff claims that his Eighth Amendment rights were violated when defendant Baca housed plaintiff in an "unsanitary" cell (#11, p. 7). Defendants maintain that plaintiff has failed to exhaust his administrative remedies with respect to any conditions of confinement claim under the Eighth Amendment (#45, p. 6).

#### a. Exhaustion

The Prison Litigation Reform Act of 1996 (the "PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Although once within the discretion of the district court, the exhaustion of administrative remedies is now mandatory. *Booth v. C.O. Churner*, 532 U.S. 731 (2001). Those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter v. Nussle*, 534 U.S. 516, 524 (2002), citing *Booth*, 532 U.S. at 739-40 n.5. Even when the prisoner seeks remedies not available in the administrative proceedings, notably money damages, exhaustion is still required prior to filing suit. *Booth*, 532 U.S. at 741. Recent case law demonstrates that the Supreme Court has strictly construed section 1997e(a). *Id.* at 741 n.6 ("We will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"). Furthermore, the PLRA requires "proper exhaustion," meaning that the prisoner must use "all steps the agency holds out, and doing so *properly* (so that the agency addresses the merits)." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006); *Ngo v. Woodford*, 539 F.3d 1108, 1110 (9th Cir. 2008) (holding that prisoner failed to exhaust his administrative remedies due to untimely filing of appeal); *see also, e.g., Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev. 2006) (construing the "proper exhaustion" requirement of *Woodford* to mean that a grievance has been properly exhausted (1) when fully addressed on the merits ("the merits test"), and (2) when a grievance has complied with all critical procedural rules and deadlines ("the compliance test")).

1              **b.      NDOC Procedures**

2       The NDOC grievance procedure is governed by Administrative Regulation 740 ("A.R. 740") (#45, Ex. A). In order to exhaust available remedies, A.R. 740 requires the following: (1) an informal review process; (2) a first level formal grievance appealing the informal grievance decision to the warden; and (3) a second level grievance, which is decided by the Assistant Director of Operations. *Id.* A.R. 740 requires NDOC officials to respond at each grievance level within a specified time period, beginning from the date of receipt of the inmate's grievance. *Id.* Inmates are given six months to file an informal grievance when the claims involve personal property damage or loss, personal injury, medical claims or any other torts claims. *Id.* Plaintiff then has five days after the return of a decision based on the level of review to appeal the decision. *Id.* In any event, the grievance procedure, from the informal level grievance to the prisoner's receipt of a second level grievance, is not to last more than seventy-five days. *Id.*

        Here, plaintiff lodged an informal grievance on June 12, 2007, concerning the conditions of his cell (#48, p. 63). A prison official appears to have signed the informal grievance on June 19, 2007, and stamped the grievance as "received" on June 20, 2007.[6] *Id.* On July 23, 2007, (thirty-four days after prison officials' receipt of the informal grievance and forty-two days after plaintiff's filing of the informal grievance), plaintiff submitted a first level grievance. *Id.* p. 58. The first level grievance bears no signature or stamp that could be attributed to NDOC officials, and (in what appears to be plaintiff's hand) a note at the top reads "fail to respond in 25 days."[7] *Id.* On September 19, 2007, (fifty-nine days after plaintiff's submission of the first level grievance and over one hundred days after plaintiff's original filing), plaintiff's submitted a second level grievance. *Id.* p. 62.

---

[6] At the bottom of the page is plaintiff's signature with the date "December 3, 2007," and a short note, presumably that of plaintiff, which reads, "I've addressed each level month's [sic] ago. Scheming to follow up on thier [sic] paper work" (#48, p. 63).

[7] Presumably, plaintiff's informal level grievance had not been returned, and plaintiff then filed a first level grievance.

1  The grievances plainly do not comply with the time limits in the NDOC grievance procedure, and plaintiff has not properly exhausted his administrative remedies. The entire NDOC grievance procedure spans no more than seventy-five days, and plaintiff's grievance of this issue greatly exceeds that time frame. Therefore, the court dismisses plaintiff's Eighth Amendment claim regarding the conditions of confinement in his cell for failure to exhaust his administrative remedies.

**4.  Fourth Amendment**

Within count II of his complaint, plaintiff also alleges a violation of his Fourth Amendment rights, presumably when defendants conducted "room searches" (#11, p. 7). Defendants argue that plaintiff's Fourth Amendment rights as a prisoner are limited and that plaintiff cannot state a claim.[8]

Prisoners have no Fourth Amendment right of privacy in their cells. *See Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984) ("The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions."); *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996).

Here, plaintiff does not allege any violation of Fourth Amendment rights beyond the search of his cell. As there is no right of privacy in his cell, plaintiff fails to state a valid claim under the Fourth Amendment. This claim is dismissed with prejudice because no facts consistent with those in the complaint could cure the deficiency.

**5.  Fourteenth Amendment: Failure to Protect**

In count III, plaintiff alleges that defendant Neven failed to protect plaintiff from sexual harassment of prison guards. Plaintiff claims such a violation under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment.[9]

---

[8] Defendants also argue that plaintiff's claim may be analyzed under the Due Process Clause of the Fourteenth Amendment. While removal of plaintiff's property indeed raises the issue (and the court appreciates defendants' briefing of the issue), a full due process analysis is not necessary because plaintiff's complaint fails to raise sufficient factual averments. Plaintiff merely states that defendant Jackson removed all of his personal property. He does not refer to, nor does he include facts which would implicate the adequacy of the procedures used pre- or post-deprivation of property. Nor does plaintiff appear to allege that the taking of his property is a violation of the substantive component of the Due Process Clause.

[9] Under the Eighth Amendment, prison officials have a duty to take reasonable steps to protect inmates from physical abuse. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). In this case, however, plaintiff's claim does not encompass physical abuse, only emotional injury. As such, plaintiff cannot

11

### a. Due Process Clause

To maintain a substantive due process claim, plaintiff must demonstrate that the egregious official conduct is so extreme as to shock the court's conscience. *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998). Plaintiff's allegation based on defendant Neven's failure to protect him from one incident of sexual harassment is not so shocking as to implicate the Fourteenth Amendment.

### b. Equal Protection

"Prisoners are protected under the Equal Protection Clause . . . from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (emphasis in original) (citation omitted). Plaintiff has made no allegations that prison officials have acted because of his membership in a protected class. Therefore, plaintiff has failed to state a claim under the Equal Protection Clause.

### 6. Eleventh Amendment Immunity

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity . . . against one of the United States by Citizens of another State . . . ." U.S. Const. amend XI. The Supreme Court has held that a suit against a state official in his or her official capacity is not suit against that official, but rather a suit against the official's office; therefore, an official acting in his or her official capacity is not a "person" under section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Since the state and its

---

overcome the "physical injury requirement" of the PRLA, which states that [n]o federal civil action may be brought by a prisoner . . . for emotional injury suffered while in custody without a prior showing of physical injury." *See* 42 U.S.C. § 1997e(e); *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002) (recovery of compensatory damages for mental and emotional injury requires a showing of more than *de minimus* physical injury). Nonetheless, to the extent that plaintiff's claims seek relief under the Fourteenth Amendment, the court examines such a claim. *See Oliver*, 289 F.3d at 627.

12

officials are not considered "persons" within the meaning of section 1983, "they cannot be held liable under the statute for money damages." *Bank of Lake Tahoe v. Bank of Am.*, 318 F.3d 914, 918 (9th Cir. 2003).

In his complaint, plaintiff names defendants in their official and individual capacities (#11) and requests damages. *Id*. It is clear that defendants cannot be sued in their official capacities for money damages. *Bank of Lake Tahoe*, 318 F.3d at 918. Therefore, to the extent that plaintiff seeks damages, the court dismisses with prejudice all claims against defendants in their official capacities.[10]

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that plaintiff fails to state a claim and all claims are dismissed. Plaintiff's Fourth Amendment claim and claims for damages against all defendants in their official capacities are dismissed with prejudice.

All are other claims are dismissed without prejudice and with leave to amend.

Therefore, the court recommends that defendants' motion to dismiss (#45) be **GRANTED**.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion to dismiss (#45) be **GRANTED**. Although plaintiff's Fourth Amendment claim and all claims against defendants in

---

[10] Because plaintiff fails to state a plausible claim, the court need not address qualified immunity issues.

their official capacity for money damages shall be dismissed with prejudice, all remaining claims are to be dismissed without prejudice with leave to amend.

**DATED:** January 26, 2010.

_____
**UNITED STATES MAGISTRATE JUDGE**